UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DOLLY BELLE, on behalf of J.S., a minor,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | Case No. 2:19-cv-00077-JAD-EJY<br><br>**REPORT AND RECOMMENDATION** |

## I.   Introduction

Pending before the Court is Dolly Belle's Motion to Reverse or, in the alternative, Remand filed on behalf of her minor son J.S.[1] ECF No. 38 filed on July 22, 2021. On August 20, 2021, the Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") filed an unopposed motion seeking an extension of time to file a cross-motion to affirm and respond to Plaintiff's Motion for Reversal and/or Remand. ECF No. 39. The extension request was granted, and the Commissioner was given through and including October 22, 2021 to file his cross motion and response. ECF No. 41. When nothing was filed by Defendant on October 22, 2021, the Court, *sua sponte*, entered a Minute Order extending the due date for the cross motion and response to November 2, 2021. ECF No. 43. The Minute Order advised the Commissioner that "[i]f no response [to Plaintiff's Motion wa]s filed on or before that date, the Court w[ould] grant Plaintiff's Motion." *Id*. As of the date of this Report and Recommendation, the Commissioner has not filed a cross motion or response and has not sought a further extension of time to do so.

United States District Court for the District of Nevada Local Rule 7-2(d) holds that a Court may treat the failure to oppose a motion as consent to the granting of that motion. For this reason, the Court finds the Social Security Administration has consented to Plaintiff's Motion to Reverse or Remand. However, given the nature of the pending Motion, the Court discusses why it finds the Motion meritorious.

---

[1] J.S. is the claimant in this case and is referred to herein as either J.S. or Plaintiff.

1

**II.     Discussion**[2]

    A.     <u>Determining Disability for Children Under the Social Security Act</u>.

The decision of the Commissioner of Social Security that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied.[3] The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.[4] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[5]

A reviewing court must consider the entire record as a whole and weigh the evidence that supports as well as the evidence that detracts from an ALJ's conclusions.[6] If substantial evidence supports an ALJ's findings, or if there is conflicting evidence supporting a finding of either disability or non-disability, the findings of the ALJ are conclusive.[7] The ALJ's conclusions may only be set aside if an improper legal standard was applied in weighing the evidence.[8] Further, the Ninth Circuit recognizes that "harmless error applies in the Social Security context."[9] A harmless error is one "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion."[10]

When determining whether a child is disabled for purposes of SSI, an ALJ must apply the three step sequential evaluation process established under Title 20 of the Code of Federal Regulations § 416.924.[11] The three step process requires the ALJ to determine whether (1) the claimant is currently engaged in substantial gainful activity, (2) the claimant has a medically

---

[2] J.S. provides a thorough account of the procedural background, summary of conditions, medical evidence contained in the Administrative Record, the hearing before the ALJ, and the ALJ's decision. ECF No. 38 at 2-9. As stated, the Social Security Administration did not respond and, therefore, these summaries are uncontested and adopted by the Court as accurate.
[3] *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
[4] *Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).
[5] *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing *Morgan*, 169 F.3d at 599); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).
[6] *Jones*, 760 F.2d at 995.
[7] *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).
[8] *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).
[9] *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted).
[10] *Id.* at 1055.
[11] A child is disabled if he/she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

determinable impairment or combination of impairments that is severe, and (3) the claimant's impairment or combination of impairments meets or medically equals the requirements of a listed impairment or functionally equals the listings.[12]  "The claimant bears the burden of establishing a prima facie case of disability."[13]

Functional equivalence requires an assessment of what the child cannot do, what the child has difficulty doing, what the child needs help doing, and what the child is restricted from doing because of his/her impairments.[14]  When doing this assessment, an ALJ must consider "the interactive and cumulative effects" of all of the child's impairments for which evidence has been submitted, including impairments "that are not 'severe.'"[15]  The ALJ must consider a child's functioning in all activities at home, school, and in the community to determine how appropriately, effectively, and independently a child performs such activities "compared to the performance of other children … [the same age] who do not have impairments."[16]

In order to establish that an impairment or combination of impairments is functionally equivalent to the listings, a claimant must show that his/her impairment or combination of impairments results in an extreme limitation in one area of functioning or marked limitations in two areas of functioning.[17]  The regulations identify six "areas of functioning intended to capture all of what a child can or cannot do."[18]  The six areas are referred to as "domains" and include (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *Id*.

A child has an extreme limitation in a domain if impairments "interferes very seriously with … [a child's] ability to independently initiate, sustain, or complete activities. … [D]ay-to-day functioning may be very seriously limited when … impairment(s) limits only one activity or when

---

[12] 20 C.F.R. § 416.924(b)-(d); *Nesmith ex rel. A.S. v. Astrue*, Case No. CV-07-217, 2008 WL 958206, at *2 (E.D. Wash. Apr. 8, 2008).
[13] *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).
[14] *Id.*
[15] *Id.*
[16] 20 C.F.R. § 416.926a(b).
[17] 20 C.F.R. § 416.926a(d).
[18] 20 C.F.R. § 416.926a(b)(1).

3

the interactive and cumulative effects of … impairment(s) limit several activities. Extreme limitation also means a limitation that is more than marked. Extreme limitation is the rating we give to the worst limitations."[19] A marked limitation is one in which the "impairment(s) interferes seriously with … [a child's] ability to independently initiate, sustain, or complete activities."[20] A child's "day-to-day functioning may be seriously limited when … [his/her] impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. Marked limitation also means a limitation that is 'more than moderate' but 'less than extreme.'"[21] A "less than marked limitation" is not defined in 20 C.F.R. § 416.926a.

### B. The ALJ's Findings.

The ALJ found J.S. was an older infant on October 27, 2011, the date the original application for SSI benefits was filed, and that he is currently in grade school.[22] The ALJ next found that J.S. was not engaged in substantial gainful activity since the application date.[23] The ALJ concluded that Plaintiff's only medically determinable impairment at the time of the original application was premature birth, but "[i]n the current case, … the [C]laimant's ADHD is the only new impairment," which "is severe as it causes more than minimal functional limitations."[24] The ALJ found that J.S. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments stating that the "medical expert Dr. Julian Kivowitz testified that the claimant's impairment of ADHD did not meet or medically equal any mental listing."[25] Finally, the ALJ concluded that J.S. "has not been disabled … since October 27, 2011, the date the application was filed …."[26]

### C. Errors Claimed by Plaintiff.

J.S. avers that the ALJ erred by failing to consider and give proper weight to evidence in the record including (1) failing to give proper weight to Plaintiff's mother's testimony, and (2) setting

---

[19] Id. § 416.926a(e)(3)(i) (internal quote marks removed).
[20] Id. 416.926a(e)(2)(i).
[21] Id. (Internal quote marks removed.)
[22] Administrative Record (AR) 25.
[23] Id.
[24] Id.
[25] Id.
[26] AR 34

4

aside the opinions of physicians who examined J.S. in favor of a consulting physician's conclusory testimony. Plaintiff also claims that the ALJ's decision was not supported by substantial evidence because his impairments included marked limitations in at least two domains of functioning.[27]

    D.  <u>The Mother's Testimony was not Properly Considered by the ALJ.</u>

In childhood disability cases, where the child is unable to adequately describe his symptoms, the Commissioner accepts the testimony of the person most familiar with the child's condition, such as a parent.[28] When an ALJ discounts a parent's testimony, he must give reasons that are "germane" to that witness.[29] In this case, the ALJ failed to properly consider the mother's testimony finding her testimony "somewhat exaggerative," unsupported by the Teacher's Questionnaire that did not describe J.S. as the mother did, and unsupported by relevant medical evidence.[30] It is worth noting that the 2016 hearing in this matter was a total of 23 minutes long, and the ALJ asked Plaintiff's mother no more than a handful of clarifying questions.[31]

Credibility determinations as to witnesses should "sufficiently articulate the reasons . . . in order to permit meaningful judicial review."[32] Importantly, "[a] conclusory statement that the [witness's] allegations have been considered, or are (or are not) credible will not suffice."[33] Here, the ALJ did not sufficiently articulate what portions of the mother's testimony was exaggerated or unsupported by medical evidence.[34] The ALJ also did not discuss or mention whether he considered that the mother's testimony indicating that J.S.'s impairments affect him most significantly at home.[35] The ALJ, who gave "substantial evidentiary weight to the opinion of consultive examiner, R. Ryan Gunton, Ph.D."[36] appears to ignore that Dr. Gunton stated in both of his assessments that he found Plaintiff's mother reliable.[37] Finally, the ALJ mentions the mother's report to UCD

---

[27] ECF No. 38 at 2.
[28] *Smith ex rel. Enge v. Massanari*, 139 F.Supp.2d 1128, 1134 (9th Cir. 2001).
[29] *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).
[30] AR 26-27.
[31] AR 68-89.
[32] *Beth v. Astrue*, 494 F. Supp. 2d 979, 1003-04 (E.D. Wis. 2007) (quoting *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (citing SSR 96-7p))).
[33] *Id*.
[34] AR 27.
[35] *Id*.
[36] *Id*.
[37] AR 406, 421.

5

Medical Center Mental Health Services in which apparently said her motivation to seek treatment was to support a claim for SSI.[38] But this single reference, alone, does not equate to nefarious or exaggerated testimony.

The ALJ asked Plaintiff's mother nothing of substance during the 23 hearing, yet reaches his conclusion that she exaggerated without providing any analysis that would allow for a meaningful review of the determination by the Court.[39] The ALJ's failure to explain his rejection of Plaintiff's mother's testimony was in error. The error is not harmless because it is not inconsequential to the ultimate non-disability determination.[40] Under these circumstances, remand for further proceedings is appropriate.[41]

      E.    <u>The ALJ's Findings with Respect to at Least Two of Plaintiff's Domain Limitations are not Supported</u>.

In the Ninth Circuit, the ALJ may "reject the opinions of [] examining physicians, contradicted by a nonexamining physician, only for specific and legitimate reasons that are supported by substantial evidence in the record."[42] "[O]pinions from nontreating and nonexamining sources are never assessed for controlling weight."[43] The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling.[44] Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[45]

In this case, the ALJ gave "substantial evidentiary weight" to: (i) Dr. Gunton, "who evaluated the claimant twice"; (ii) non-examining physician Dr. Joseph Cools, Ph.D; and (iii) non-examining

---

[38] AR 27.
[39] *Id*.
[40] *Stout*, 454 F.3d at 1055.
[41] *Merrill ex. rel. Merrill v. Apfel*, 224 F.3d 1083, 1086 (9th Cir. 2000) (remanding for evaluation of child claimant's claim under Listing of Impairments where, among other things, ALJ failed to provide specific explanation for rejecting testimony of claimant's mother).
[42] *Moore v. Comm'r of the SSA*, 278 F.3d 920, 924 (9th Cir. 2002) (quoting *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996)); *see also Propps v. Colvin*, Case No. 2:13-cv-00662-LDG-NJK, 2014 WL 12684082, at *9 (D. Nev. June 12, 2014) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (holding that the ALJ "may disregard a treating physician's opinion by providing specific and legitimate reasons" for doing so.").
[43] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (internal citations omitted).
[44] 20 C.F.R. § 404.1527(c).
[45] *Id*. § 404.1527(c)(6).

doctor, Dr. Judith Levinson, Ph.D.[46] The ALJ gave "great evidentiary weight" to the opinions of the State agency medical consultant, Dr. H. Pham (non-examining physician), who the ALJ says provided an opinion consistent with the medical evidence in the record and the testimony of another non-examining medical expert Dr. Kivowitz (a child psychologist).[47] A review of the administrative record shows Dr. Kivowitz prepared no reports and provided his opinion solely through testimony during the 23 minute hearing.[48] Dr. Kivowitz's testimony regarding Plaintiff's domain functioning followed his summary of what he had reviewed and included the following:

> Q: Okay, let's go over the domains. Aquiring and using information, where would you put that?
> A: Less than marked.
> Q: Attending and completing tasks?
> A: Less than marked.
> Q: Okay. Let's see, and interacting and relating with others?
> A: Also at less than marked.
> Q: Okay. Moving about and manipulating objects?
> A: None.
> Q: … Caring for yourself?
> A: Less than marked.
> Q: Okay. And health and physical well-being?
> A: None.[49]

The ALJ asked Dr. Kivowitz no questions in follow up to these opinions.

With respect to consideration of Plaintiff's limitation in the domain of "Attending and Completing Tasks," Dr. Gunton found that Plaintiff's "VSI score showed that he would be challenged in maintaining focus on visual stimuli and working with his hands"; however, Dr. Gunton did not classify Plaintiff's impairments as marked, less than marked or anything else.[50] Dr. Cools found J.S. to have less than marked limitations in this area, but also stated J.S. was overactive and aggressive at times.[51] The State agency psychologist, Dr. Levinson found in September 2014 that J.S. "had marked limitation in this domain."[52] Despite these differing opinions, the ALJ concludes his analysis by appearing to rely solely on Dr. Kivowitz. The ALJ states: "Dr. Kivowitz testified

---

[46] AR 27.
[47] Id.; AR 68.
[48] AR 68-79.
[49] AR 71.
[50] AR 29-30.
[51] AR 30.
[52] Id.

7

that the claimant had less than marked limitation in this domain (Testimony)."[53] The ALJ provides no discussion, analysis, or evidence supporting his conclusion.[54] While it is true that if evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the Court may not substitute its judgment for that of the Commissioner.[55] However, without the ALJ specifically articulating his reasoning, the ALJ has effectively prevented this Court from reviewing whether the ALJ's judgement was a reasonable interpretation of the evidence. Remand for further proceedings is warranted on this basis.

With respect to Plaintiff's limitations in the domain of interacting and relating with others, the ALJ spends less than one page summarizing that: (i) Dr. Gunton saw J.S. in December 2013 and September 2014, but the ALJ references *no finding* for the 2014 visit; (ii) Dr. Cools saw J.S. in September 2014 and found he had less than marked limitations in this domain; (iii) Dr. Levinson also saw J.S. in September 2014 and found less than marked limitation in this domain and; and, finally (iv) Dr. Kivowitz testified (having never seen J.S.) that J.S. had less than marked limitations in this domain. These conclusions are repeated by the ALJ absent any discussion or analysis of the evidence on which he relied in the record. It appears, rather, that the ALJ simply adopted (or rubber stamped) what others said.

In stark contrast, Plaintiff argues there is substantial evidence in the record that supports the conclusion that he suffers marked limitations in this area.[56] A review of these citations demonstrate that J.S. does not tolerate new and unfamiliar surroundings, is hyperactive, has poor concentration, beats up his brother, tends to be aggressive when frustrated, is challenged with school and peer interactions due to hyperactivity, is inattentive and has some defiant behavior, throws tantrums when his mother attempts to console him, hurts himself, abuses himself in front of his siblings, and cannot play video games with his brother.[57] It is, at best, unclear whether the ALJ considered any of this evidence because he mentions none of it when he simply adopted the conclusion of non-examining

---

[53] AR 30.
[54] AR 29-30.
[55] *See Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002).
[56] ECF No. 38 at 20 and numerous citations therein.
[57] *Id*.

health care providers who had no relationship with J.S.[58] The ALJ appears to have considered nothing which would tend to contradict his finding.

The same concerns is raised with respect to the ALJ's determination that J.S. has less than marked limitations in his ability to care for himself.[59] While the ALJ recites the findings of various providers, he provides no reasoning whatsoever to support his conclusion. This complete lack of analysis does not allow the Court to uphold the ALJ's decision.

In sum, a review of the ALJ's findings summarizes certain pieces of evidence, then simply asserts a conclusion without constructing a bridge from one to the other.[60] "The ALJ must build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."[61] The ALJ failed to properly consider significant evidence and did not even mention testimony of Plaintiff's mother. The ALJ's decision must demonstrate the path of his reasoning, and the evidence must lead logically to his conclusion.[62]

## III. Conclusion

The decision whether to remand for further proceedings is within the discretion of the district court.[63] Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.[64] However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.[65] Here, as set out above, outstanding issues remain before a finding of disability can be made. Accordingly, remand is appropriate.

---

[58] AR 31.
[59] AR 33.
[60] *Baker ex rel. Baker v. Barnhart*, 410 F.Supp.2d 757 (E.D. Wis. 2005).
[61] *Muheim v. Berryhill*, Case No. 2:17-cv-247 RSM JRC, 2017 WL 5496169, at *3 (W.D. Wash. Oct. 24. 2017) (internal citation omitted); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (even if the evidence in the record supports the decision, the court cannot uphold it if the ALJ's reasoning does not build an accurate and logical bridge between the evidence and the result).
[62] *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996).
[63] *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).
[64] *Id*. at 1179 (decision whether to remand for further proceedings turns upon their likely utility).
[65] *Id*.

9

### IV. Recommendation

IT IS HEREBY RECOMMENDED that Plaintiff's Motion to Reverse or, in the alternative, Remand (ECF No. 38) be GRANTED in part and DENIED in part.

IT IS FURTHER RECOMMENDED that that this case be remanded to the Commissioner of Social Security for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g) consistent with the concerns expressed above.

IT IS FURTHER RECOMMENDED that Plaintiff's request for reversal and an award of immediate benefits be DENIED.

IT IS FURTHER RECOMMENDED that the ALJ take any further action needed to complete the administrative record and to promptly issue a new decision.

DATED this 4th day of November, 2021.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).